### PACKER CORPORATION *v.* UTAH.

No. 357. Argued January 20, 1932.—Decided February 23, 1932.

Messrs. *Gardner Abbott* and *William H. Reeder, Jr.,* with whom *Messrs. Dan B. Shields* and *W. T. Kinder* were on the brief, for appellant.

*Messrs. George P. Parker,* Attorney General of Utah, and *Byron D. Anderson,* Assistant Attorney General, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Section 2, of c. 145, Laws of Utah, 1921, as amended by c. 52, § 2, Laws of 1923, and c. 92, Laws of 1929, provides:

" It shall be a misdemeanor for any person, company, or corporation, to display on any bill board, street car sign, street car, placard, or on any other object or place of display, any advertisement of cigarettes, cigarette papers, cigars, chewing tobacco, or smoking tobacco, or any disguise or substitute of either, except that a dealer in cigarettes, cigarette papers, tobacco or cigars or their substitutes, may have a sign on the front of his place of business stating that he is a dealer in such articles, provided that nothing herein shall be construed to prohibit the advertising of cigarettes, cigarette papers, chewing tobacco, smoking tobacco, or any disguise or substitute of either in any newspaper, magazine, or periodical printed or circulating in the State of Utah."

The Packer Corporation, a Delaware corporation engaged in billboard advertising and authorized to do business in Utah, was prosecuted under this statute for displaying a large poster advertising Chesterfield cigarettes on a billboard owned by it and located in Salt Lake City. The poster was displayed pursuant to a general contract for advertising Chesterfield cigarettes, made by the defendant with an advertising agency in the State of Ohio. Both the poster and the cigarettes advertised were manufactured without the State of Utah and were shipped into

it by Liggett & Myers Tobacco Company, a foreign corporation. The defendant claimed that the statute violates several provisions of the Federal Constitution; the objections were overruled; and the defendant was convicted and sentenced. On the authority of its recent decision in *State v. Packer Corp.*, 297 Pac. 1013, the highest court of the State affirmed the judgment of the trial court. 2 P. (2d) 114. The case is here on appeal under § 237 (a) of the Judicial Code, as amended by the Act of February 13, 1925, c. 229, 43 Stat. 937.

It is not denied that the State may, under the police power, regulate the business of selling tobacco products, compare *Gundling v. Chicago*, 177 U. S. 183, 188; *Austin v. Tennessee*, 179 U. S. 343, 348; and the advertising connected therewith, compare *Rast v. Van Deman & Lewis Co.*, 240 U. S. 342, 364, 365; *Tanner v. Little*, 240 U. S. 369, 384, 385. The claim is that because of its peculiar provisions the statute violates the Federal Constitution.

*First.* The contention mainly urged is that the statute violates the equal protection clause of the Fourteenth Amendment; that in discriminating between the display by appellant of tobacco advertisements upon billboards and the display by others of such advertisements in newspapers, magazines or periodicals, it makes an arbitrary classification. The history of the legislation shows that the charge is unfounded. In Utah no one may sell cigarettes or cigarette papers without a license.[1] Since 1890, it has been the persistent policy, first of the Territory and then of the State, to prevent the use of tobacco by minors, and to discourage its use by adults. Giving tobacco to a minor, as well as selling it, is a misdemeanor.[2]

---

[1] Laws of Utah, 1921, c. 145, § 1, as amended, Laws of 1923, c. 52, § 1; Laws of 1925, c. 68; Laws of 1930, c. 5, § 1.

[2] Laws of Utah, 1890, c. 65, § 1, as amended, Laws of 1911, c. 51; Laws of 1930, c. 5, § 1 (k).

So is permitting a minor to frequent any place of business while in the act of using tobacco in any form.[3] Mere possession of tobacco by the minor is made a crime.[4] And smoking by anyone in any enclosed public place (except a public smoking room designated as such by a conspicuous sign at or near the entrance) is a misdemeanor.[5] In 1921, the legislature enacted a general prohibition of the sale or giving away of cigarettes or cigarette papers to any person, and of their advertisement in any form. Laws of Utah, 1921, c. 145, §§ 1, 2. After two years, however, the plan of absolute prohibition of sale was abandoned in favor of a license system. Laws of Utah, 1923, c. 52, § 1. But the provision against advertisements was retained, broadened to include tobacco in most other forms. In 1926, this statute was held void under the commerce clause, as applied to an advertisement of cigarettes manufactured in another State, inserted in a Utah newspaper which circulated in other States. *State* v. *Salt Lake Tribune Publishing Co.*, 68 Utah 187; 249 Pac. 474. Thereupon the legislature, unwilling to abandon altogether its declared policy, amended the law by striking out the provision which prohibited advertising in newspapers and periodicals. The classification alleged to be arbitrary was made in order to comply with the requirement of the Federal Constitution as interpreted and applied by the highest court of the State. Action by a State taken to observe one prohibition of the Constitution does not entail the violation of another. *J. E. Raley & Bros.* v. *Richardson*, 264 U. S. 157, 160; *Des Moines Nat. Bank* v. *Fairweather*, 263 U. S. 103, 116, 117. Compare *Dolley*

---

[3] Laws of Utah, 1921, c. 145, § 3. See Laws of 1923, c. 52, § 1.

[4] Laws of Utah, 1903, c. 135, as amended, Laws of 1911, c. 51; Laws of 1913, c. 59.

[5] Laws of Utah, 1921, c. 145, § 4, as amended, Laws of 1923, c. 52, § 4.

v. *Abilene Nat. Bank,* 179 Fed. 461, 463, 464. It is a reasonable ground of classification that the State has power to legislate with respect to persons in certain situations and not with respect to those in a different one.[6] Compare *Williams* v. *Walsh,* 222 U. S. 415, 420.

Moreover, as the state court has shown, there is a difference which justifies the classification between display advertising and that in periodicals or newspapers: " Billboards, street car signs, and placards and such are in a class by themselves. They are wholly intrastate, and the restrictions apply without discrimination to all in the same class. Advertisements of this sort are constantly before the eyes of observers on the streets and in street cars to be seen without the exercise of choice or volition on their part. Other forms of advertising are ordinarily seen as a matter of choice on the part of the observer. The young people as well as the adults have the message of the billboard thrust upon them by all the arts and devices that skill can produce. In the case of newspapers and magazines, there must be some seeking by the one who is to see and read the advertisement. The radio can be turned off, but not so the billboard or street car placard. These distinctions clearly place this kind of advertisement in a position to be classified so that regulations or prohibitions may be imposed upon all within the class. This is impossible with respect to newspapers and magazines." 297 Pac. 1013, 1019. The legislature may recognize degrees of evil and adapt its legislation accordingly.

---

[6]A contention was made in argument that the State had not in fact acted upon this basis of classification since the statute makes no distinction as to newspapers and magazines circulating solely in intrastate commerce. But the record does not indicate the existence of any such publications. Moreover, the administrative difficulties of any effort to make the applicability of the statute depend upon the character of the circulation of a particular newspaper or magazine would be such as to justify the exclusion of the entire class.

*Miller* v. *Wilson,* 236 U. S. 373, 384; *Truax* v. *Raich,* 239 U. S. 33, 43.

*Second.* The defendant contends that to make it illegal to carry out the contract under which the advertisement was displayed takes its property without due process of law because it arbitrarily curtails liberty of contract. The contention is without merit. The law deals confessedly with a subject within the scope of the police power. No facts are brought to our attention which establish either that the evil aimed at does not exist or that the statutory remedy is inappropriate. *O'Gorman & Young* v. *Hartford Fire Insurance Co.,* 282 U. S. 251, 257; *Hardware Dealers Mutual Fire Insurance Co.* v. *Glidden Co.,* 284 U. S. 151.

*Third.* The defendant contends also that the statute imposes an unreasonable restraint upon interstate commerce because it prevents the display on billboards of posters shipped from another State. It does not appear from the record that the defendant is the owner of the posters. Its interest is merely in its billboards located in the State, upon which it displays advertisements for which it is paid. So far as the posters are concerned, assuming them to be articles of commerce, compare *Charles A. Ramsay Co.* v. *Associated Bill Posters,* 260 U. S. 501, 511, the statute is aimed, not at their importation, but at their use when affixed to billboards permanently located in the State. Compare *Browning* v. *Waycross,* 233 U. S. 16, 22, 23; *General Railway Signal Co.* v. *Virginia,* 246 U. S. 500, 510. The prohibition is non-discriminatory, applying regardless of the origin of the poster. Its operation is wholly intrastate, beginning after the interstate movement of the poster has ceased. Compare *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 503; *Hebe Co.* v. *Shaw,* 248 U. S. 297, 304. See also *Corn Products Refining Co.* v. *Eddy,* 249 U. S. 427, 433, To sustain the

defendant's contention would be to hold that the posters, because of their origin, were entitled to permanent immunity from the exercise of state regulatory power. The Federal Constitution does not so require. Compare *Mutual Film Corp.* v. *Industrial Commission,* 236 U. S. 230, 240, 241. So far as the articles advertised are concerned, the solicitation of the advertisements, it may be assumed, is directed toward intrastate sales. Compare *Di Santo* v. *Pennsylvania,* 273 U. S. 34. Whatever may be the limitations upon the power of the State to regulate solicitation and advertisement incident to an exclusively interstate business, the commerce clause interposes no barrier to its effective control of advertising essentially local. Compare *Jell-O Co.* v. *Landes,* 20 F. (2d) 120, 121; *International Text-Book Co.* v. *District of Columbia,* 35 App. D. C. 307, 311, 312.

*Affirmed.*