## Unemployment Compensation Tax on Banks

MARGIOTTI, Attorney General, July 7, 1937.—We have your request of May 21, 1937, in which you desire to know whether State banks and bank and trust companies which are members of the Federal Reserve System are subject to the provisions of the Unemployment Compensation Law of December 5, 1936 (Act no. 1), as amended by the Act of May 18, 1937 (Act no. 175). These institutions, hereinafter called banks, are corporations organized under the laws of the Commonwealth.

The Unemployment Compensation Law is a measure designed as a comprehensive scheme for unemployment benefits for workers employed within the State by employers designated by the law. Under sections 301 and 302, these employers include all who employ one or more persons for some portion of each of some 20 days during a calendar year, each day being in a different week, except those engaged in certain specified employments.

The law imposes upon the employers the obligation to pay a certain percentage of their total yearly payrolls into the State Unemployment Compensation Fund. For 1936, the levy is 0.9 percent; for 1937, it is 1.8 percent, and for 1938 and subsequent years it is 2.7 percent.

Section 4 excludes from the employment upon whose payrolls a contribution becomes due:

"Service performed in the employ of the United States Government or of an instrumentality of the United States".

The Federal Reserve Act of December 23, 1913, 38 Stat. at L. 259, as amended by the Act of May 7, 1928, 45 Stat. at L. 492, provides:

"All banks or trust companies incorporated by special law or organized under the general laws of any State, which are members of the Federal reserve system, when designated for that purpose by the Secretary of the Treasury, shall be depositaries of public money, under such regulations as may be prescribed by the Secretary; and they may also be employed as financial agents of the Government; and they shall perform all such reasonable

duties, as depositaries of public money and financial agents of the Government, as may be required of them. The Secretary of the Treasury shall require of the banks and trust companies thus designated satisfactory security, by the deposit of United States bonds or otherwise, for the safe keeping and prompt payment of the public money deposited with them and for the faithful performance of their duties as financial agents of the Government."

In the case of Westfall v. United States, 274 U. S. 256, the question was raised as to the power of Congress to enact a law punishing crimes committed against State banking institutions which were members of the Federal Reserve System. On page 259, Mr. Justice Holmes, delivering the opinion of the court, stated:

"Finally, Congress may employ state corporations with their consent as instrumentalities of the United States, *Clallam County v. United States*, 263 U. S. 341".

We may assume, without actually deciding, that State banks which are members of the Federal Reserve System may be instrumentalities of the United States. However, are they Federal instrumentalities within the language of section 4 of the Unemployment Compensation Law?

At the outset we may state that it is immaterial for the purposes of this inquiry to determine whether or not the unemployment compensation contribution is a tax. In this connection, see the case of Carmichael et al. v. Southern Coal & Coke Co., 301 U. S. 495, wherein the United States Supreme Court sustained the constitutionality of the Alabama Unemployment Compensation Act. That act had provisions similar to ours with reference to contributions. The Supreme Court of Alabama had already held the levy of such contributions to be a proper excise tax: Beeland Wholesale Co. v. Kaufman et al., (Ala.) 174 So. 516. The Supreme Court of the United States stated, on page 508:

"As the present levy has all the indicia of a tax, and is of a type traditional in the history of Anglo-American legislation, it is within state taxing power, and it is immaterial whether it is called an excise or by another name. . . . Its validity under the Federal Constitution is to be determined in the light of constitutional principles applicable to state taxation."

That the State has power to tax these banks, even though they may aid the United States Government in certain particulars, cannot be doubted. The mere fact that their property is used, among others, by the United States as an instrument for effecting its purposes, does not relieve them from State taxation: Choctaw, Oklahoma & Gulf R. R. Co. et al. v. Mackey, etc., 256 U. S. 531.

In the case of Metcalf & Eddy v. Mitchell, Admx., 269 U. S. 514, which involved the right of the Federal Government to tax income received by engineers who were employed to advise States or subdivisions of States with reference to proposed water supply and sewage disposal systems, Mr. Justice Stone, in delivering the opinion of the court that such income was taxable, stated on pages 522 and 523:

"When, however, the question is approached from the other end of the scale, it is apparent that not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his property is an instrumentality of government within the meaning of the rule."

Again, on page 524, Mr. Justice Stone stated:

"While it is evident that in one aspect the extent of the exemption must finally depend upon the effect of the tax upon the functions of the government alleged to be affected by it, still the nature of the governmental agencies or the mode of their constitution may not be disregarded in passing on the question of tax exemption; for it is obvious that an agency may be of such a character or so intimately connected with the exercise of a power

or the performance of a duty by the one government, that any taxation of it by the other would be such a direct interference with the functions of government itself as to be plainly beyond the taxing power.

"It is on this principle that, as we have seen, any taxation by one government of the salary of an officer of the other, or the public securities of the other, or an agency created and controlled by the other, exclusively to enable it to perform a governmental function (*Gillespie* v. *Oklahoma, supra,* [257 U. S. 501]) is prohibited. But here the tax is imposed on the income of one who is neither an officer nor an employe of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity. . . . In such a situation it cannot be said that the tax is imposed upon an agency of government in any technical sense, and that the tax itself cannot be deemed to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way. . . .

" 'It seems to us extravagant to say that an independent private corporation for gain created by a State, is exempt from state taxation either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time'. . . .

"But we do decide that one who is not an officer or employee of a state, does not establish exemption from federal income tax merely by showing that his income was received as compensation for service rendered under a contract with the state; and when we take the next step necessary to a complete disposition of the question, and inquire into the effect of the particular tax, on the functioning of the state government, we do not find that it impairs in any substantial manner the ability of plaintiffs in error to discharge their obligations to the state or the ability of a state or its subdivisions to procure the

services of private individuals to aid them in their undertakings."

In applying the above-stated principle to the instant case, there can be no doubt of the right of the State to compel contribution from these member banks. They are given their powers to exist by the State Government. The exaction of contributions would in no way impair their efficiency in acting as an aid of the Federal Government.

Further, precedent is not needed to justify the power of the State to require unemployment compensation contributions from member banks. Section 1019 of the Banking Code of May 15, 1933, P. L. 624, authorizes State banks and State bank and trust companies to become members of a Federal Reserve bank. This section provides:

"A bank or a bank and trust company may purchase and hold, for the purpose of becoming a member of a Federal Reserve Bank, so much of the capital of such Federal Reserve Bank as will qualify it for membership therein. It may acquire and exercise all powers, not in conflict with the laws of this Commonwealth, which are conferred upon any such member bank by the Federal Reserve Act, its amendments and supplements. Such bank or bank and trust company may be examined by Federal authorities in accordance with the provisions of the Federal Reserve Act, but, unless the department shall, in its discretion, accept the examinations or reports made under the Federal Reserve Act in lieu of those required by the laws of this Commonwealth, it shall be examined by, and make reports to, the department in the manner provided by law for all banks or bank and trust companies. Except as otherwise specifically provided in this act, such bank or bank and trust company, and its officers, directors, employes, and shareholders, shall continue to be subject to all the liabilities and duties imposed upon them by this act or by any other law of this Commonwealth."

The right of the State to impose conditions upon the exercise of corporate and banking powers cannot be

doubted. In section 1019, it has imposed a condition upon its allowing these banking institutions to become members of the Federal Reserve System, to wit:

". . . such bank or bank and trust company, and its officers, directors, employes, and shareholders, shall continue to be subject to all the liabilities and duties imposed upon them by this act or by any other law of this Commonwealth."

Hence, even in the absence of judicial authority, the power to exact these contributions would clearly exist by virtue of the terms of section 1019, authorizing these banks to become members of the Federal Reserve System.

Having the power to exact these contributions, has the Commonwealth exempted these institutions from their payment? This becomes a matter of legislative intent.

If we were to hold that member banks were exempt from the provisions of the Unemployment Compensation Law, while all other State banks were within its provisions, there would be grave danger that such interpretation would be unconstitutional, in that it would violate the equal protection clause of the Fourteenth Amendment of the Federal Constitution, and article III, sec. 7, of our State Constitution, which prohibits legislation granting special or exclusive privileges or immunities to any corporation or individual.

It is true that these sections do not forbid classification of objects for the purposes of legislation. However, this classification must not be arbitrary nor based upon illusory distinctions. In the case of Commonwealth v. McDermott, 296 Pa. 299, the Supreme Court, at page 305, stated:

"We said in Com. v. Grossman, 248 Pa. 11, 15: 'We have sustained classification as the proper exercise of legislative power, and held that it is a legislative question with which the courts will not interfere, if made in good faith *and based on genuine and substantial distinction of the subjects classified.*'" (Italics ours.)

Although, as stated before, we are not determining the question of whether or not these contributions are taxes, if we should adopt the viewpoint expressed in Carmichael et al. v. Southern Coal & Coke Co., supra, then article IX, sec. 1, of the Pennsylvania Constitution, which provides that "All taxes shall be uniform, upon the same class of subjects", would also be involved in the present inquiry.

In the case of Schoyer et al. v. Comet Oil & Refining Co., 284 Pa. 189, wherein the interpretation of article IX, sec. 1, was in question, the Supreme Court stated, at page 197:

"The test of classification is whether it produces diversity in results or lack of uniformity in its operation either on the given subject of tax or the persons affected as payers. *There must be a real distinction between the objects with which the law deals for it to be valid.* As stated in Gulf, Colorado & Santa Fe Railway Co. v. Ellis, 165 U. S. 150, 155, *'Classification cannot be made arbitrarily. . . . That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. . . . [p. 159].* Arbitrary selection can never be justified by calling it classification.' " (Italics ours).

The only difference in the character of the operations of State banks not members of the Federal Reserve System, and State banks that are such members, is that the latter may be called upon to aid the United States Government in its fiscal operations. However, it cannot be denied that they may never be called upon to exercise such powers and assume such duties. Hence, the assumption of authority and the imposition of the duty to act as an aid of the Federal Government cannot be a controlling factor in determining the question of the reasonableness of classification herein involved. The fundamental characteristics of a State bank remain. No distinction exists with respect to the purposes of the Unemployment Compensation Law.

It should be borne in mind that we are here dealing solely with a question of interpretation, and that in this case we are confronted with a situation in which two constructions may be placed upon an act of assembly. As stated in the case of Carr v. Aetna Accident & Liability Co., 263 Pa. 87, 91:

"Even were this so, there is another rule of greater force which prevents that presumption from applying here, viz: that if there are two constructions which can be placed upon an act of assembly, one of which will make it constitutional and the other unconstitutional, the former will always be preferred, for it can never be presumed that the legislature intended to do the vain thing of passing a wholly nugatory provision: Sharpless v. West Chester Borough, 1 Grant 257, 260."

This rule is also well expressed by Justice White in United States ex rel. v. Delaware & Hudson Co., 213 U. S. 366, wherein, at page 408, he stated:

". . . where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."

In the case of Commonwealth v. Schuylkill Trust Co., 327 Pa. 127, 134, Mr. Justice Stern, in delivering the opinion of the court, stated:

" 'A presumption of much importance in this country, . . . is that a legislative intent to violate the constitution is never to be assumed, if the language of the statute can be satisfied by a contrary construction': Endlich, *Interpretation of Statutes*, Section 178. 'It is a safe and wholesome rule . . . to regard as excepted by necessary implication from even the most express and absolute general provisions, all cases to which a statute cannot constitutionally apply': Idem, Section 179."

This canon of construction has been enacted into statutory law by the Act of May 28, 1937 (Act no. 282) which, among other things, sets forth rules for the interpretation of statutes, and provides, in section 52:

"PRESUMPTIONS IN ASCERTAINING LEGIS-
LATIVE INTENT. In ascertaining the intention of the
Legislature in the enactment of a law, the courts may be
guided by the following presumptions, among others. . . .

"(3) That the Legislature does not intend to violate
the Constitution of the United States or of this Common-
wealth."

If we construe the clause in question as permitting the
exemption, the unreasonable classification would strike
down the right to subject nonmember banks to the law.
However, rejecting such interpretation, no constitutional
question arises.

It may be argued that by holding that these member
banks are not exempt, the exemption clause has been
rendered meaningless, since it would have the effect of
exempting only those instrumentalities from whom we
cannot exact contributions under the Federal Constitu-
tion. To this argument we cannot subscribe.

There may be other instrumentalities upon which the
exemption clause may operate where the Constitution of
the United States does not forbid the imposition of the
duty on such instrumentalities. Even if there would be
no such cases, the provisions of an act setting forth that
which is already the applicable law under the Constitu-
tion is by no means an unusual situation. We may call
attention to the various statutes which allow the appoint-
ing power to remove his appointees, even though this
power has been expressly hitherto granted by the Penn-
sylvania Constitution. The exemption may serve a proper
purpose as a declaration of notice to officials charged
with the administration of that act, and also to remove
any question of constitutionality.

In the case of Carmichael et al. v. Southern Coal & Coke
Co., supra, the Supreme Court, in suggesting possible
reasons for the exemptions allowed under the Alabama
statute, stated on page 513:

"*Fear of constitutional restrictions*, and a wholesome
respect for the proper policy of another sovereign, would

explain exemption of the United States, and of the interstate railways, compare Packer Corp. v. Utah, supra, 109 [285 U. S. 105, 52 S. Ct. 273, 274, 76 L. Ed. 643, 79 A. L. R. 546]." (Italics ours.)

For further answer, even if such interpretation would render the clause meaningless, the rule requiring a statute to be given a constitutional interpretation, where possible, is one of "greater force" and must, therefore, be applied to defeat such argument.

It has been suggested, since title 9 of the Social Security Act of August 14, 1935, 49 Stat. at L. 620, which relates to unemployment compensation, contains exemption language identical to that contained in section 4 of the Unemployment Compensation Law, supra, and since prior to the passage of the Pennsylvania law the Bureau of Internal Revenue had ruled that State banks members of the Federal Reserve System were Federal instrumentalities, and, therefore, exempt from title 9 of the Social Security Act, supra, that the Pennsylvania legislature, in using the same language, adopted the construction of the Federal statute.

The adoption of a Federal statute that has been construed by an administrative board of that government does not bring the adopting act within the rule that a statute adopted from another sovereign carries with it the construction placed upon it by the courts of that State. As shown by the statement just made, this rule is applicable only to a judicial construction.

Hence, as stated at 59 C. J. 1069, §627:

"The adoption by a state of a part of a federal statute does not carry with it the construction placed thereon by the interstate commerce commission."

Even though the Pennsylvania act be said to have adopted the language of the Federal statute, the construction of the Bureau of Internal Revenue is in the same position as that of the Interstate Commerce Commission upon Federal laws within its jurisdiction.

An additional reason that must be advanced against this suggestion is the fact that the above-stated rule of construction of adopted statutes is inapplicable when such interpretation would contravene the Constitution of the adopting State.

Hence, while the rule of the Bureau of Internal Revenue might be persuasive, it certainly is not binding upon the Commonwealth. The Pennsylvania act may exist independently of the Social Security Act, supra: section 302 and section 605 of the Unemployment Compensation Law, supra. Whereas title 9 requires contributions only from employers of eight or more, the Pennsylvania law applies to all employers, subject to certain exemptions, who employ persons for the required number of weeks in a calendar year, regardless of the number of persons employed.

Hence, the argument that both acts must be given a uniform interpretation is met at the threshold by the fact that the Pennsylvania statute, in its positive terms, differs from title 9 of the Social Security Act. Between a desire for uniform interpretation and a desire for a constitutional construction the latter must govern.

Although we have assumed that these member banks are Federal instrumentalities, it may well be argued that section 1019 of the Banking Code, hereinbefore quoted, estops these banks from declaring that they are such instrumentalities, and hence, regardless of constitutional questions, the liability would be established. The policy of the Commonwealth as expressed in the said section would appear to deny to these banks any dual status. Rather, it would appear that the legislature intended that at all times these banks must retain their identity as creatures of the State and, as such, subject to any law applicable to banks not members of the system.

The broad provisions of section 1019 would appear to allow the State to impose such liabilities and duties upon these banks as might impair their ability to render any service whatsoever to the United States. Such retention

of absolute subjugation to the will of the Commonwealth leads to the conclusion that, within the purview of our laws, State banks which become members of the Federal Reserve System are not Federal instrumentalities.

In the case of Hiatt v. United States, 4 F.(2d) 374, certiorari denied in 268 U. S. 704, the Seventh Circuit Court of Appeals, in sustaining a conviction under a Federal statute governing crimes committed against Federal Reserve banks, alluded to the relationship between the State bank and the Federal Reserve System, and stated, on page 375:

"2. The matter of affiliation between the Dickinson Trust Company and the Federal Reserve Bank, aside from the investment in stock, seems to present merely a business arrangement between the Federal Reserve Bank and the trust company, which was not made under compulsion, and was doubtless regarded as advantageous by both concerns. It was simply an arrangement made for the advancement and in the interests of the business for which the trust company was chartered."

This language reduces the relationship between the member banks and the Federal Reserve System to a business arrangement. They stand in exactly the same position in respect to relationship with the Federal Government as did the engineers in the case of Metcalf & Eddy v. Mitchell, Admx., supra.

The unemployment compensation contribution is, therefore, not a "tax . . . imposed upon an agency of government in any technical sense". Certainly, the exemption by statute "of an instrumentality of the United States" cannot change these banks into such agencies so that they now may claim a status not hitherto enjoyed by them.

Thus, we are logically led to the conclusion, first, that even if these member banks could claim that they were Federal instrumentalities, undoubtedly, they would be liable for a contribution such as is imposed by the Unemployment Compensation Law if the law were silent upon the question of exemptions; second, that the exemption

of Federal instrumentalities cannot relieve them, since it would bring about an unconstitutional classification between member banks and nonmember banks, and hence, under proper rules of construction, such intent to exempt all Federal instrumentalities, even where an unconstitutional classification would arise, cannot be imputed to the legislature; third, that, applying the law to the realm of things as they actually exist, these banks are not Federal instrumentalities.

We are of the opinion, and you are, therefore, advised that State banks members of the Federal Reserve System are not exempt from the provisions of the Unemployment Compensation Law.  From Frederic Ray, Harrisburg.