Susan Lee MINARCINI et al.,
Plaintiffs-Appellants,

v.

STRONGSVILLE CITY SCHOOL DIS-
TRICT et al., Defendants-Appellees,

and

Michael Bingham et al., Applicants for
Intervention-Appellees.

Nos. 75–1467 to 75–1469.

United States Court of Appeals,
Sixth Circuit.

Argued March 29, 1976.

Decided Aug. 30, 1976.

, Howard R. Besser, Shaker Heights, Ohio, Michael T. Honohan, Benesch, Friedlander, Mendleson & Coplan, Cleveland, Ohio, for appellants in No. 75–1467.

Arthur L. Cain, Cain & Lobo, Cleveland, Ohio, for appellants in Nos. 75–1468, 75–1469.

Arthur L. Cain, Cain & Lobo, Cleveland, Ohio, John C. Burkholder, Columbus, Ohio, Kenneth G. Preston, Berea, Ohio, for appellees in No. 75–1467.

Michael E. Geltner, Washington, D. C., Michael T. Honohan, Cleveland, Ohio, Howard Besser, Shaker Heights, Ohio, Stanley K. Laughlin, American Civil Liberties Union, Columbus, Ohio, Benjamin B. Sheerer, Cleveland, Ohio, for appellees in No. 75–1468.

Barbara Kaye Besser, Shaker Heights, Ohio, Michael T. Honohan, Cleveland, Ohio, Howard Besser, Shaker Heights, Ohio, for appellees in No. 75–1469.

Before EDWARDS, PECK and MILLER,* Circuit Judges.

EDWARDS, Circuit Judge.

This record presents a vivid story of heated community debate over what sort of books should be 1) selected as high school text books, 2) purchased for a high school library, 3) removed from a high school library, or 4) forbidden to be taught or assigned in a high school classroom. The setting of this controversy is the high school in Strongsville, Ohio, a suburb of Cleveland.

* Honorable William E. Miller died on April 12, 1976, and did not participate in this opinion.

This case originated as a class action brought under 42 U.S.C. § 1983 (1970) and 28 U.S.C. § 1343(3) (1970) against the Strongsville City School District, the members of the Board of Education and the Superintendent of the school district by five public high school students through their parents, as next friends. The suit claimed violation of First and Fourteenth Amendment rights in that the school board, disregarding the recommendation of the faculty, refused to approve Joseph Heller's *Catch 22* and Kurt Vonnegut's *God Bless You, Mr. Rosewater* as texts or library books, ordered Vonnegut's *Cat's Cradle* and Heller's *Catch 22* to be removed from the library, and issued resolutions which served to prohibit teacher and student discussion of these books in class or their use as supplemental reading.

The original complaint produced a counterclaim for "malicious prosecution" by one of the defendant school board members, Arthur L. Cain, and a motion to intervene as defendants filed on behalf of still other students in the high school by their parents, indicating that plaintiffs' requested relief was entirely antagonistic to the wishes and interests of the intervenors. The District Judge denied motions for summary judgment by defendants and intervenors, dismissed the counterclaims of defendant Cain, tried the case on the original complaint, and dismissed it after entering findings of fact and conclusions of law holding that the defendants had not violated any First or Fourteenth Amendment rights of the plaintiffs.

On review of the briefs and records filed in this court, and the oral arguments heard before us, we affirm the dismissal of the counterclaims of defendant Arthur L. Cain for the reasons set forth in the District Judge's order of March 22, 1974. Likewise for the reasons set forth on this point in the District Judge's Memorandum Opinion and Order filed August 9, 1974, we affirm his determination of the class represented by plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure thereby reject-

ing the appellate arguments of the intervenors.

Turning now to the principal issues in this case, we shall discuss them separately.

## I  THE BOARD'S DECISION NOT TO APPROVE OR PURCHASE CERTAIN TEXTS

■ It appears clear to this court that the State of Ohio has specifically committed the duty of selecting and purchasing textbooks to local boards of education. O.R.C. § 3329.07 (1975) provides as follows:

§ 3329.07  Determination of textbooks required; order; payment; transportation charges. (GC § 4854–6)

The board of education of each city, exempted village, and local school district shall cause it to be ascertained and at a regular meeting determine which, and the number of each of the textbooks the schools under its charge require. The clerk at once shall order the books agreed upon from the publisher, who on receipt of such order must ship them to the clerk without delay. He forthwith shall examine the books, and, if found right and in accordance with the order, remit the amount to the publisher. The board must pay for the books so purchased and in addition all charges for the transportation of the books out of the general fund of said district or out of such other funds as it may have available for such purchase of textbooks. If such board at any time can secure from the publishers books at less than such maximum price, they shall do so, and without unnecessary delay may make effort to secure such lower price before adopting any particular textbooks.

■ Clearly, discretion as to the selection of textbooks must be lodged somewhere and we can find no federal constitutional prohibition which prevents its being lodged in school board officials who are elected representatives of the people. To the extent that this suit concerns a question as to whether the school faculty may make its professional choices of textbooks prevail over the considered decision of the Board of

Education empowered by state law to make such decisions, we affirm the decision of the District Judge in dismissing that portion of plaintiffs' complaint. In short, we find no federal constitutional violation in this Board's exercise of curriculum and textbook control as empowered by the Ohio statute.

■ Nor do we think that the Board's decisions in selecting texts were arbitrary and capricious or offended procedural due process. There was a Board committee appointed to make recommendations on textbooks. It met with the faculty committee and with a citizens' committee to discuss the books recommended by the faculty before the Board received its committee's recommendations and acted thereon. As to the appellants' complaints of arbitrary and capricious action, we again affirm the District Court.

■ In this determination and in those which follow, we keep in mind the admonitions of the United States Supreme Court in the leading case of *Epperson v. Arkansas*, 393 U.S. 97, 104–05, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968):

Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. Our courts, however, have not failed to apply the First Amendment's mandate in our educational system where essential to safeguard the fundamental values of freedom of speech and inquiry and of belief. By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values. On the other hand, "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools," *Shelton v. Tucker*, 364 U.S. 479, 487 [81 S.Ct. 247, 251, 5 L.Ed.2d 231] (1960). As this Court said in *Keyishian v. Board of Regents*, the First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom." 385 U.S.

589, 603 [87 S.Ct. 675, 683, 17 L.Ed.2d 629] (1967). (Footnote omitted.)

## II  THE REMOVAL OF CERTAIN BOOKS FROM THE SCHOOL LIBRARY

The record discloses that at a special meeting of the Strongsville Board of Education on August 19, 1972, according to the official minutes, the following motion was made and adopted:

Dr. Cain moved, seconded by Mr. Henzey, that the textbook entitled *Cat's Cradle* not be used any longer as a text or in the library in the Strongsville Schools.

Discussion.

Dr. Cain moved the question.

Mr. Henzey requested the Clerk to call for the vote.

Roll call: Ayes: Dr. Cain, Mr. Henzey, Mrs. Wong

Nays: Mr. Woollett

Motion carried.

Similarly at a meeting of the Strongsville Board of Education on August 31, 1972, the following action was recorded in the minutes:

Mrs. Wong moved, seconded by Dr. Cain, that the textbook *Catch 22* be removed from the Library in the Strongsville Schools.

Roll call: Ayes: Mr. Ramsey, Mrs. Wong, Dr. Cain

Nays: Mr. Woollett

Motion carried.

In his opinion the District Judge held that "the novels *Catch 22* by Joseph Heller, *God Bless You, Mr. Rosewater* and *Cat's Cradle* by Kurt Vonnegut, Jr., are not on trial in this proceeding." Further he stated, "Literary value of the three novels [has] been conceded by the parties  .   .   ." and that "obscenity as defined in the Supreme Court's pronouncements is eliminated as an issue herein by agreement of counsel." These holdings do not appear to be disputed on this appeal, and we accept them.

The District Judge, in dismissing the complaint concerning removal from the li-

brary of Heller's *Catch 22* and Vonnegut's *Cat's Cradle*, relied strongly upon a Second Circuit opinion in *Presidents Council, District 25 v. Community School Board No. 25*, 457 F.2d 289 (2nd Cir.), *cert. denied*, 409 U.S. 998, 93 S.Ct. 308, 34 L.Ed.2d 260 (1972). In that case, after noting, as we have above, that some authorized body has to make a determination as to the choice of books for texts or for the library, the Second Circuit continued by discussing a parallel right on the part of a board to "winnow" the library:

> The administration of any library, whether it be a university or particularly a public junior high school, involves a constant process of selection and winnowing based not only on educational needs but financial and architectural realities. To suggest that the shelving or unshelving of books presents a constitutional issue, *particularly where there is no showing of a curtailment of freedom of speech or thought*, is a proposition we cannot accept. *Id.* at 293. (Emphasis added.) (Footnote omitted.)

The District Judge in our instant case appears to have read this paragraph as upholding an absolute right on the part of this school board to remove from the library and presumably to destroy any books it regarded unfavorably without concern for the First Amendment. We do not read the Second Circuit opinion so broadly (see qualifying clause italicized above). If it were unqualified, we would not follow it.

A library is a storehouse of knowledge. When created for a public school it is an important privilege created by the state for the benefit of the students in the school. That privilege is not subject to being withdrawn by succeeding school boards whose members might desire to "winnow" the library for books the content of which occasioned their displeasure or disapproval. Of course, a copy of a book may wear out. Some books may become obsolete. Shelf space alone may at some point require some selection of books to be retained and books to be disposed of. No such rationale is involved in this case, however.

The sole explanation offered by this record is provided by the School Board's minutes of July 17, 1972, which read as follows:

Mrs. Wong reviewed the Citizens Committee report regarding adoption of "God Bless You Mr. Rosewater".

Dr. Cain presented the following minority report:

1. It is recommended that *God Bless You Mr. Rosewater* not be purchased, either as a textbook, supplemental reading book or library book. The book is completely sick. One secretary read it for one-half hour and handed it back to the reviewer with the written comment, "GARBAGE".

2. Instead, it is recommended that the autobiography of Captain Eddie Rickenbacker be purchased for use in the English course. It is modern and it fills the need of providing material which will inspire and educate the students as well as teach them high moral values and provide the opportunity to learn from a man of exceptional ability and understanding.

3. For the same reason, it is recommended that the following books be purchased for immediate use as required supplemental reading in the high school social studies program:

> *Herbert Hoover*, a biography by Eugene Lyons;
> *Reminiscences of Douglas MacArthur*

4. It is also recommended in the interest of a balanced program that *One Day in The Life of Ivan Denisovich* by A. I. Solzhenitsyn, be purchased as a supplemental reader for the high school social studies program.

5. It is also recommended that copies of all of the above books be placed in the library of each secondary school.

6. It is also recommended that *Cats Cradle*, which was written by the same character (Vennegutter) who wrote, using the term loosely, *God Bless You Mr. Rosewater*, and which has been used as a textbook, although never legally adopted by the Board, be withdrawn immediately

and all copies disposed of in accordance with statutory procedure.

7. Finally, it is recommended that the McGuffy Readers be bought as supplemental readers for enrichment program purposes for the elementary schools, since they seem to offer so many advantages in vocabulary, content and sentence structure over the drivel being pushed today.

While we recognize that the minute quoted above is designated as a "minority report," we find it significant in view of intervenor Cain's active role in the removal process and the fact that it offers the only official clue to the reasons for the School Board majority's two book removal motions. The Board's silence is extraordinary in view of the intense community controversy and the expressed professional views of the faculty favorable to the books concerned.

■ In the absence of any explanation of the Board's action which is neutral in First Amendment terms, we must conclude that the School Board removed the books because it found them objectionable in content and because it felt that it had the power, unfettered by the First Amendment, to censor the school library for subject matter which the Board members found distasteful.

■ Neither the State of Ohio nor the Strongsville School Board was under any federal constitutional compulsion to provide a library for the Strongsville High School or to choose any particular books. Once having created such a privilege for the benefit of its students, however, neither body could place conditions on the use of the library which were related solely to the social or political tastes of school board members.[1]

The Supreme Court long ago said: "It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing condi-

tions upon a benefit or privilege." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Keyishian v. Board of Regents,* 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967). *See also Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

A public school library is also a valuable adjunct to classroom discussion. If one of the English teachers considered Joseph Heller's *Catch 22* to be one of the more important modern American novels (as, indeed, at least one did), we assume that no one would dispute that the First Amendment's protection of academic freedom would protect both his right to say so in class and his students' right to hear him and to find and read the book. Obviously, the students' success in this last endeavor would be greatly hindered by the fact that the book sought had been removed from the school library. The removal of books from a school library is a much more serious burden upon freedom of classroom discussion than the action found unconstitutional in *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

■■ Further, we do not think this burden is minimized by the availability of the disputed book in sources outside the school. Restraint on expression may not generally be justified by the fact that there may be other times, places, or circumstances available for such expression. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 556, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Spence v. Washington,* 418 U.S. 405, 411 n.4, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974); *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939). *Cf. Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

A library is a mighty resource in the free marketplace of ideas. *See Abrams v. Unit-*

1. On the other hand, it would be consistent with the First Amendment (although not required by it) for every library in America to contain enough books so that every citizen in

the community could find at least some which he or she regarded as objectionable in either subject matter, expression or idea.

*ed States*, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173 (1919) (Holmes, J., dissenting). It is specially dedicated to broad dissemination of ideas. It is a forum for silent speech. *See Tinker v. Des Moines Independent Community School District, supra; Brown v. Louisiana*, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966).

We recognize of course, that we deal here with a somewhat more difficult concept than a direct restraint on speech. Here we are concerned with the right of students to receive information which they and their teachers desire them to have. First ·Amendment protection of the right to know has frequently been recognized in the past. *See Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Kleindienst v. Mandel*, 408 U.S. 753, 763, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 386, 390, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); *Thomas v. Collins*, 323 U.S. 516, 534, 65 S.Ct. 315, 89 L.Ed. 430 (1945); *Martin v. Struthers*, 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943). Nonetheless, we might have felt that its application here was more doubtful absent a very recent Supreme Court case. In *Virginia State Board of Pharmacy v. Virginia Citizens Consumers Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346 (1976), Mr. Justice Blackmun wrote for the Court:

> Freedom of speech presupposes a willing speaker. But where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients both. This is clear from the decided cases. In *Lamont v. Postmaster General*, 381 U.S. 301 [85 S.Ct. 1493, 14 L.Ed.2d 398] (1965), the Court upheld the First Amendment rights of citizens to receive political publications sent from abroad. More recently, in *Kleindienst v. Mandel*, 408 U.S. 753, 762–763 [92 S.Ct. 2576, 2581, 33 L.Ed.2d 683, 691] (1972), we acknowledged that

this Court has referred to a First Amendment right to "receive information and ideas," and that freedom of speech " 'necessarily protects the right to receive.' " And in *Procunier v. Martinez*, 416 U.S. 396, 408–409 [94 S.Ct. 1800, 1808–1809, 40 L.Ed.2d 224, 237–238] (1974), where censorship of prison inmates' mail was under examination, we thought it unnecessary to assess the First Amendment rights of the inmates themselves, for it was reasoned that such censorship equally infringed the rights of noninmates to whom correspondence was addressed. There are numerous other expressions to the same effect in the Court's decisions. See, *e. g., Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390 [89 S.Ct. 1794, 1806–1807, 23 L.Ed.2d 371, 389] (1969); *Stanley v. Georgia*, 394 U.S. 557, 564 [89 S.Ct. 1243, 1247–1248, 22 L.Ed.2d 542, 549] (1969); *Griswold v. Connecticut*, 381 U.S. 479, 482 [85 S.Ct. 1678, 1680–1681, 14 L.Ed.2d 510, 513–514] (1965); *Marsh v. Alabama*, 326 U.S. 501, 505 [66 S.Ct. 276, 278, 90 L.Ed. 265, 267–268] (1946); *Thomas v. Collins*, 323 U.S. 516, 534 [65 S.Ct. 315, 324–325, 89 L.Ed. 430, 442–443] (1945); *Martin v. Struthers*, 319 U.S. 141, 143 [63 S.Ct. 862, 863, 87 L.Ed. 1313, 1316–1317] (1943). If there is a right to advertise, there is a reciprocal right to receive the advertising, and it may be asserted by these appellees.

We believe that the language just quoted, plus the recent cases of *Kleindienst v. Mandel, supra*, and *Procunier v. Martinez, supra*, serve to establish firmly both the First Amendment right to know which is involved in our instant case and the standing of the student plaintiffs to raise the issue.

As to this issue, we must reverse.

## III  ACADEMIC FREEDOM CLAIMS

Plaintiffs-appellants contend that the Board also violated the First Amendment by prohibiting teachers from referring to any of the three books under consid-

**584**

eration in classroom discussion.[2] As to this issue the District Judge entered the following finding of fact:

> The procedure thus adopted was openly implemented and faculty members were not foreclosed or limited either formally or informally, directly or indirectly, to utilize individual teaching methodology or from discussing any subject including the books here in issue or assigning said books as outside or supplemental reading or the subject of a review in the course of classroom instruction. No faculty member was intimidated, reprimanded, discharged or threatened with such action as a result of circumstances here involved . . . .

As to this issue we have examined the record carefully. We have no doubt that the two School Board resolutions we have already dealt with would have had a somewhat chilling effect upon classroom discussion. If so, the invalidation of these resolutions should be an adequate remedy. What the testimonial record does not support is a holding by this court that the just quoted finding of fact from the District Judge is clearly erroneous. The testimony does not clearly establish that the Board ever directed the faculty (or directed the principal to direct the faculty) not to refer to any particular books in classroom teaching. For these reasons we affirm the District Judge upon this issue.

The judgment of the District Court is affirmed as to issues numbered one (I) and three (III) of this opinion. It is vacated and reversed as to issue numbered two (II). The District Court is ordered to amend the judgment so as to declare the School Board resolutions of August 19, 1972 and August 31, 1972, null and void as violative of the First Amendment to the United States Constitution and to direct the members of the Strongsville School Board to replace in the library the books with which these resolutions dealt by purchase, if necessary, out of the first sums available for library purposes.

---

**2.** Plaintiffs also made the same contention as to the high school principal. There were proofs which tended to support this contention. However, the then principal has left the school system, and there is no complaint as to his replacement.