Gina GAMBINO et al., Plaintiffs,

v.

The FAIRFAX COUNTY SCHOOL BOARD et al., Defendants.

Civ. A. No. 76–946–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Feb. 23, 1977.

James W. Korman, Arlington, Va., Christopher B. Fager, Washington, D. C., Kinney & Smith, Arlington, Va., for plaintiffs.

Thomas J. Cawley, William E. Donnelly, III, McCandlish, Lillard, Bauknight, Church & Best, Fairfax, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

ALBERT V. BRYAN, Jr., District Judge.

This action was brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343 to enjoin the defendant from prohibiting the publication of an article entitled "Sexually Active Students Fail to Use Contraception" in "The Farm News," a newspaper published in the Hayfield Secondary School (Hayfield). Stipulations of Fact have been filed and the issues were briefed and orally argued to the Court on February 15, 1977. Both parties commendably have resolved any factual dispute (with one possible exception discussed below) and agree that there are no material facts not covered by the Stipulations which the Court adopts as its findings of fact.

Hayfield is governed by the Fairfax County School Board (the School Board), an agency of the Commonwealth of Virginia. On August 11, 1976 the School Board issued notice 6130 which prohibited the schools from offering sex education until a decision was reached on a proposed program (Stipulations of Fact, Appendix 4). The article in question here was submitted for publication on November 22, 1976 while the School Board's notice was in effect. Pursuant to a prior agreement regarding potentially controversial material, this article was submitted to the principal, Doris Torrice, for review. Perceiving that portions of the submission containing information on contraceptives, apparently viewed apart from those portions incorporating results obtained from a canvass of Hayfield student attitudes toward birth control, violated notice 6130, she ordered plaintiffs not to publish it as written. Although plaintiffs were given the option of publishing the article with the objectionable passages excised, they chose to insist on printing all or none of the piece.

Ms. Torrice's decision was reviewed and upheld by the Advisory Board on Student Expression based upon a reading of Section 2, Chapter II of Policy 2330.1, Responsibilities and Rights—Secondary School Students (RR–SSS) (Stipulations of Fact, Appendices 4 and 8). The relevant language of that provision of RR–SSS is as follows:

> The student activity program is an integral part of the total educational offering for Fairfax Public Schools. As such, it is subject to the same administrative controls as other educational programs. . . . All student activities . . . shall meet the following guidelines: . . . B. Student activities shall relate generally to the school program and not interfere with school operation.

The Farm News, being a school publication, is a student activity.

The action of the Advisory Board was sustained by the Division Superintendent of the Fairfax County Public Schools and by the School Board. A few days before hearing plaintiffs' appeal, the School Board adopted Regulation 6131 approving a sex education program but specifically proscribing birth control as a subject of that program (Stipulations of Fact, Appendix 6(B)).

As noted above, The Farm News is a student activity. Some staff members are enrolled in Journalism and receive academic credit for their work on the paper (Stipulations of Fact, Appendix 1). Other staff members work on the paper as an extracurricular activity. The paper is written and edited in the school during school hours and at the homes of the participants. Revenues are generated from advertising, allocations by the School Board, sales of individual issues, and student subscriptions. This latter source involves a tie-in with the school yearbook, i.e., no student may receive the yearbook unless he also subscribes to the newspaper. In the year 1975–76 (which the Court treats as typical) those sources yielded the following amounts:

```
Advertising $ 783.48
School Board allocation 1,000.00
Individual sales 148.58
Subscriptions 1,852.00
```

Additionally, the faculty advisor provided to supervise the paper was paid a salary supplement of $1,225.00. Copies of the newspaper usually are distributed to student subscribers in homeroom.

As the Court views it, this case turns upon one issue—whether The Farm News is a publication protected by the First Amendment. The authority of the School Board to determine course content in the school curriculum is not questioned. Nor is there any contention that the content of the article would fall outside the limits of First Amendment freedom if the newspaper otherwise is protected. In fact, upon an actual reading of the article, the Court is surprised at its innocuousness and that it could spawn the controversy at hand.[1] Nevertheless, the defendants have perceived sufficient danger in the publication to warrant judicial resolution of the problem. Defendants also recognize that if the newspaper is found to be a First Amendment forum the regulations pursuant to which this suppression was undertaken are open to serious question under the principles established in *Nitzberg v. Parks*, 525 F.2d 378 (4th Cir. 1975); *Baughman v. Freienmuth*, 478 F.2d 1345 (4th Cir. 1973); and *Quarterman v. Byrd*, 453 F.2d 54 (4th Cir. 1971).

The defendants rely on the contention that The Farm News is not a public forum entitled to First Amendment protection. They argue that the newspaper is essentially an "in-house" organ of the school system, or alternatively that the students in Hayfield are a "captive audience," rendering the publication subject to reasonable regulation.

■ While the state may have a particular proprietary interest in a publication that legitimately precludes it from being a vehicle for First Amendment expression, it may not foreclose constitutional scrutiny by mere labelling. *Cf. Trujillo v. Love*, 322 F.Supp. 1266 (D.Colo.1971). Once a publication is determined to be in substance a free speech forum, constitutional protections attach and the state may restrict the content of that instrument only in accordance with First Amendment dictates.

■ The extent of state involvement in providing funding and facilities for The Farm News does not determine whether First Amendment rights are applicable. The language of *Antonelli v. Hammond*, 308 F.Supp. 1329 (D.Mass.1970), is persuasive.

We are well beyond the belief that any manner of state regulation is permissible simply because it involves an activity which is a part of the university structure and is financed with funds controlled by the administration. The state is not necessarily the unrestrained master of what it creates and fosters.

*Id.* at 1337; *accord, Bazaar v. Fortune*, 476 F.2d 570, 574–75 (5th Cir.), *modified en banc*, 5 Cir., 489 F.2d 225 (1973) (per curiam), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). *See Joyner v. Whiting*, 477 F.2d 456, 460 (4th Cir. 1973).

The defendants urge that this principle is inapposite because the cited decisions have arisen out of the college environment. They point out, and the Court does not dispute, that the "First Amendment rights of children are not 'co-extensive with those of adults.'" *Quarterman, supra* 453 F.2d at 58, *quoting Tinker v. Des Moines Ind. Comm. Sch. Dist.*, 393 U.S. 503, 515, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (Stewart, J., concurring). *Cf. Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). Further, the defendants assert the illogic of applying the First Amendment to a high school newspaper, conjuring up visions of irresponsible and uncontrollable publication.

■ There are, however, two distinctions that invalidate these objections. While the scope of constitutional freedom

---

1. A controversy which, given the normal curiosity and ingenuity of youth, has assured that copies of the offending article now have been secured by many if not most of the students sought to be protected.

may vary with the nature of the environment and the maturity of the individuals affected, the considerations governing the applicability of First Amendment analysis in the first instance do not change. Either the First Amendment is operative, or it is not. And if it is applicable, only then does the distinction between the *extent* to which speech is protected in colleges and in high schools become significant.[2]

■ Defendants' fears of irresponsible journalism are met first by the fact that no evidence of it has surfaced in the past or in the article here in question, nor has there been any demonstrated likelihood of it in the future. More significantly, defendants have failed to appreciate the very real distinction between what a private citizen and the state constitutionally may do with regard to limiting otherwise protected speech. *See Bazaar, supra* 476 F.2d at 574. The First Amendment mandate is directed toward state action, not private. As no contention has been made that the student editorial board of The Farm News acts as an agent of the state, the argument that the newspaper is powerless to control the content of its own publication is without merit. Irresponsible journalism may occur at some point in the future, but speculation is not a proper consideration in the decision of the case presently before the Court.

■ Turning to the substantive question of whether The Farm News was established as a vehicle for expression, the Court finds,

based upon the language in the RR–SSS concerning publications (Stipulations of Fact, Appendix 8 at 11–12) and upon review of articles published in the past by the newspaper without objection (Stipulations of Fact, Appendix 1(A)) that this instrument was conceived, established, and operated as a conduit for student expression on a wide variety of topics. It falls clearly within the parameters of the First Amendment.

■ The defendants have suggested, however, that the circumstances under which the newspaper is produced require an application of the "captive audience" principle most recently employed by the Supreme Court in *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974). There the Court focused upon the lack of free choice which effectively compelled the users of the city transit system to receive the messages displayed on the system's vehicles, and determined that no public forum existed. Reliance was placed upon *Packer Corp. v. Utah,* 285 U.S. 105, 52 S.Ct. 273, 76 L.Ed. 643 (1932), where Justice Brandeis observed that communication of this sort is "constantly before the eyes of observers on the streets and in street cars to be seen without the exercise of choice or volition on their part." *Id.* at 110, 52 S.Ct. at 274. But Justice Brandeis also distinguished "the case of newspapers and magazines [where] there must be some seeking by the one who is to see and read the

2. While it was stipulated that Hayfield's enrollment includes grades seven through twelve, there was some uncertainty between the parties at argument as to the lower grades' access to the paper. From the representations of plaintiff's counsel which were not contested by defendants, it appears that the newspaper is not distributed to the seventh and eighth grades in homeroom; that the tie-in with the yearbook is not imposed at that level; that students in these lower grades may purchase individual copies of The Farm News; that there is no prohibition against transmittal of copies to younger students by older; and that the seventh and eighth grades are physically isolated in the school building (with areas of common use including the library). These circumstances indicate that restriction of formal distribution of The Farm News to those students would not be impracticable.

The youth of the audience is not determinative of the existence *vel non* of First Amendment protection, however. The immaturity of readers may necessitate limiting constitutional freedom, but any such limitation would require an examination of the content of the matter to be published and a balancing of the impact of that content against the state's interest measured by reference to constitutionally valid standards. As the defendants here stake their position on the inapplicability of the First Amendment, the Court does not need to define the boundaries of its protection in terms of the content of this article except insofar as the regulatory scheme may or may not be adequate to support the defendants' action. Consistent with their contention, the defendants introduced no evidence that the information in the article would be harmful to students in any of the age groups at Hayfield.

advertisement." *Id.* From that standpoint, defendants' application of the "captive audience" concept appears untenable.

The defendants have asserted, however, that the subscription tie-in with the yearbook, the distribution in home rooms, the official status of the newspaper, and peer pressure, coupled with mandatory attendance all combine to compel the student body's exposure to the contents of The Farm News. The Court is not persuaded that these circumstances establish the kind of captive audience that concerned the *Lehman* court. No substantive distinction can be drawn between the relative lack of choice in exposure to the communication in this case and that in *Tinker.* If anything, the students of Hayfield are less captive because they must act affirmatively to pick up the newspaper. In *Tinker* the non-protesting students were required to avert their eyes to avoid the message.

*Katz v. McAulay,* 438 F.2d 1058 (2d Cir. 1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972), which the defendants cite as an application of the captive audience principle to the high school milieu, is not to the contrary. There the court was considering an interlocutory appeal from a denial of a preliminary injunction. The rules under which the school authorities acted appeared sufficiently precise to render plaintiffs' probability of success short of the threshold beyond which denial of a preliminary injunction becomes an abuse of discretion. The significance of the captive nature of the student audience to the Court was its tendency to amplify conduct to a level of material and substantial disruption. The Court did not hold, nor could it have held consistent with *Tinker,* that First Amendment rights in the school were extinguished by the mere fact of compulsory attendance.

Finally defendants argue that to allow the students to publish this article would permit them to override the decision of the School Board not to include birth control in the sex education curriculum. As noted above, the Court does not question the authority of the School Board to prescribe course content. Further, while even under principles of liberal construction a considerable effort is required to find the questioned portions of the article instructional, the Court assumes that the article does contain information which, if it appeared in material used in a sex education course, would contravene the School Board's policy.

▮ A corollary of the finding that The Farm News was established as a vehicle for First Amendment expression and not as an official publication is that the newspaper cannot be construed objectively as an integral part of the curriculum offered at Hayfield. *Cf. Bayer v. Kinzler,* 383 F.Supp. 1164 (E.D.N.Y.1974), *aff'd. without opinion,* 515 F.2d 504 (2d Cir. 1975). Rather, it occupies a position more akin to the school library where more extensive and explicit information on birth control philosophy and methodology is available. (Stipulations of Fact, Appendix 7). In either place, the material is not suppressible by reason of its objectionability to the sensibilities of the School Board or its constituents. *See Minarcini v. Strongsville City School Dist.,* 541 F.2d 577 (6th Cir. 1976); *Joyner, supra.* Therefore, because the newspaper is not in reality a part of the curriculum of the school, and because it is entitled to First Amendment protection, the power of the School Board to regulate course content will not support its action in this case.

▮ Having determined that The Farm News is entitled to the First Amendment protection afforded a public forum, that the circumstances at Hayfield do not justify application of the "captive audience" theory, and that publication of the proposed article cannot be suppressed solely because its subject matter does not accord with the School Board's notion of appropriate course content, the Court finds that the application of the regulations under which the defendants acted in this instance was constitutionally invalid. The RR–SSS lacks the detailed criteria required by the line of Fourth Circuit decisions defining the permissible regulation of protected speech in high schools: *Quarterman, Baughman,* and *Nitzberg, supra.* The Court declines, how-

ever, to declare the regulations facially invalid and limits its holding solely to the application of those regulations to prohibit publication in The Farm News of any portion of the article "Sexually Active Students Fail to Use Contraception."

Accordingly the plaintiffs are entitled to an injunction prohibiting the defendants, or those acting in concert with them, from banning the publication in The Farm News of those portions of the article which were found objectionable.

 The Court further finds that the plaintiffs are the prevailing party within the meaning of the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L.No.94–559 (Oct. 19, 1976), and are entitled to an award of reasonable attorney's fees.

Plaintiffs should prepare a decree awarding the injunction mentioned above. The decree also should award the plaintiffs their costs including attorney's fees. If the amount of the latter cannot be agreed upon, the Court will fix those fees. The decree should be presented for entry after submission to counsel for the defendants for approval as to form. In the event of any disagreement as to form or as to the amount of attorney's fees, these matters should be noticed promptly for hearing.

It is so ordered.