195 F.3d 1065 (9th Cir. 1999)
 JAMES R. LINDSEY; SUN CHA LINDSEY, and and their marital community, Plaintiffs-Appellants,
MBA, INC., a Washington corporation; F I T S, LLC, a Washington limited liability corporation; SAN JUNG CORPORATION, a Washington corporation, Plaintiffs,
v.
TACOMA-PIERCE COUNTY HEALTH DEPARTMENT, a combined City-County Health Department; its Board of Health; TACOMA-PIERCE COUNTY BOARD OF HEALTH; FEDERICO CRUZ-URIBE, Director of Health for the Tacoma-Pierce County Health Department in his official capacity; BRIAN EBERSOLE, in his official capacity; FRANCEA McNAIR, in her official capacity; WENDELL BROWN, in his official capacity; KAREN BISKEY, in her official capacity; LEONARD E. SANDERSON, in his official capacity; DAVID SPARLING, in his official capacity; ROBERT W. EVANS, in his official capacity, Defendants-Appellees,
and
COUNTY OF PIERCE; CITY OF TACOMA, a municipal corporation, Defendants.
 No. 98-35416
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted August 11, 1999--Seattle, Washington
Filed November 19, 1999
 
 Floyd Abrams, Cahill, Gordon & Reindel, New York, New York, Bradley & Keller, Karen V. Chiu, Byrnes & Keller, LLP, Seattle, Washington, for the plaintiffs-appellants.
 Clifford D. Allo, Tacoma-Pierce City Health Department, Tacoma, Washington, for the defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington; Robert J. Bryan, District Judge, Presiding. D.C. No. CV-97-05076-RJB
 Before: William C. Canby, Jr., Melvin Brunetti, and Diarmuid F. O'Scannlain, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 In 1996, the Tacoma-Pierce County Health Department Board of Health adopted a resolution that bans outdoor tobacco advertising within Pierce County, Washington. The Board adopted the ban in an attempt to reduce underage tobacco use in the county. The Lindseys, owners of convenience stores who are licensed to sell tobacco products in the State of Washington, filed this action against the Board of Health and other defendants alleging that the Board's resolution was (1) an unconstitutional regulation of commercial speech under the First Amendment; (2) preempted by the Federal Cigarette Labeling and Advertising Act; (3) preempted by the Washington Tobacco Access to Minors Act; and (4) beyond the Board's statutory authority. The district court granted the Board's motion for summary judgment and entered a judgment in its favor. The Lindseys appeal from the district court's final judgment in favor of the Board. We have jurisdiction under 28 U.S.C. S 1291 and reverse because a local ban on outdoor tobacco advertising is preempted by the Federal Cigarette Labeling and Advertising Act.
 
 I.
 
 2
 James Lindsey and Sun Cha Lindsey--plaintiffs-appellants --are husband and wife and the owners of neighborhood convenience stores located in Tacoma, Washington. The Lindseys hold a cigarette retailers' license issued by the State of Washington and sell cigarettes and other tobacco products at their stores. Prior to March 1, 1997, the Lindseys displayed tobacco advertisements inside and outside their stores and received compensation from tobacco companies based on the volume of their tobacco sales, their participation in promotional programs, and their utilization of brand advertisements. On March 1, 1997, the Tacoma-Pierce County Health Department Board of Health's Resolution No. 96-1997 went into effect banning all "outdoor advertising of tobacco and tobacco products . . . within the jurisdiction of the Tacoma-Pierce County Health Department Board of Health." As a result of the Board's resolution, the Lindseys were forced to discontinue their use of outdoor tobacco advertisements.
 
 
 3
 The Tacoma-Pierce County Health Department Board of Health ("Board")--defendant-appellee--is a combined citycounty health department created by the City of Tacoma and Pierce County. Under the Washington Revised Code, the Board has the authority to "[e]nact such local rules and regulations as are necessary in order to preserve, promote and improve the public health and provide for the enforcement thereof." Wash. Rev. Code S 70.05.060. Pursuant to this authority, the Board adopted Resolution No. 96-1997, the Truth in Outdoor Tobacco Advertising Regulation ("Resolution"), on December 4, 1996, banning outdoor tobacco advertising in Pierce County.
 
 
 4
 The Board justified its adoption of the Resolution based on its findings that "[t]obacco advertising, whether intended to promote tobacco use or only compete for market share, has the consequence of promoting tobacco use" and that "[t]obacco advertising induces children to initiate tobacco use." The Board specifically targeted all outdoor tobacco advertisements because it believed that outdoor advertisements intrude into public spaces and induce minors to use tobacco. The Board, therefore, banned all tobacco advertisements that can be seen from the street unless the advertisements are presented in a tombstone format.
 
 
 5
 Under the Resolution's tombstone exception, licensed tobacco retailers can post price and availability information outside their businesses so long as the advertisements are in plain black type on a white field without adornment, color, opinion, artwork, or logos. The Resolution does not otherwise regulate the content of tobacco advertisements. No tombstone advertisement can be displayed, however, if it is visible from a school, school bus stop, bus stop, or sidewalk regularly used byminors to get to school or within one thousand feet of a school, playground, or public park. The Resolution does not regulate tobacco advertisements located inside retail establishments unless the advertisements can be seen from the street. A retailer who violates the Resolution can be fined one hundred dollars per day for each advertisement that violates the regulation.
 
 
 6
 The Lindseys filed this action against the Board and various other defendants alleging that the Resolution is invalid because it is: (1) preempted by the Federal Cigarette Labeling and Advertising Act; (2) an unconstitutional regulation of commercial speech under the First Amendment of the United States Constitution; (3) preempted by Washington's Tobacco Access to Minors Act; and (4) an impermissible exercise of legislative authority beyond the Board's statutory authority. The Lindseys and the Board filed cross-motions for summary judgment and partial summary judgment on the federal preemption, state preemption, and scope of authority claims. The district court, in a published order, denied the Lindseys' motion for summary judgment, granted the Board's motion for partial summary judgment, and dismissed the Lindseys' federal preemption, state preemption, and scope of authority claims. See Lindsey v. Tacoma-Pierce County Health Dep't, 8 F. Supp. 2d 1213 (W.D. Wash. 1997). The district court reasoned that: (1) the Resolution was not preempted by the Federal Cigarette Labeling and Advertising Act because the Resolution only regulates the location and not the content of cigarette advertisements; (2) the Resolution was not preempted by state law because the Resolution does not directly regulate indoor advertising; and (3) the Board did not exceed its authority when it adopted the Resolution because the Resolution is reasonably related to the Board's authority to enact regulations that promote and improve public health.
 
 
 7
 The Lindseys and the Board subsequently filed another round of summary judgment motions on the Lindseys' First Amendment claim. The district court, in another published order, denied the Lindseys' motion, granted the Board's motion, and dismissed the Lindseys' First Amendment claim concluding that the Resolution was a constitutional regulation of commercial speech under Central Hudson. See Lindsey v. Tacoma-Pierce County Health Dep't, 8 F. Supp. 2d 1225, 1226 (W.D. Wash. 1998). The district court reasoned that the Resolution was constitutional because it was sufficiently related to its purpose of reducing underage tobacco use and because non-speech alternatives to the regulation did not exist. The Lindseys appeal from the district court's final judgment entered in favor of the Board. We have jurisdiction under 28 U.S.C. S 1291 and now reverse.
 
 II.
 
 8
 We review a grant of summary judgment de novo. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See Margolis, 140 F.3d at 852; Bagdadi, 84 F.3d at 1197. In regard to the relevant substantive law at issue in this case, a district court's decision regarding federal preemption is reviewed de novo, see Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1186 (9th Cir. 1998), as is a district court's interpretation and construction of a federal statute. See Alexander v. Glickman, 139 F.3d 733, 735 (9th Cir. 1998); Waste Action Project v. Dawn Mining Corp., 137 F.3d 1426, 1428 (9th Cir. 1998).
 
 III.
 
 9
 Under the Supremacy Clause of the United States Constitution, the laws of the United States are "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrarynotwithstanding." Art. VI, cl. 2. Issues of federal preemption arising under the Supremacy Clause, however, "start with the assumption that the historic police powers of the States [are] not to be superseded by . . . [a] Federal Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp. , 331 U.S. 218, 230 (1947). Congressional intent is, therefore, the" `ultimate touchstone' of preemption analysis." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (quoting Malone v. White Motor Corp., 435 U.S. 497, 504 (1978)); see also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992).
 
 
 10
 Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in the legislative field. See Cipollone, 505 U.S. at 516. When, however, Congress considers the issue of preemption and adopts a preemption statute that provides a reliable indication of its intent regarding preemption, the scope of federal preemption is determined by the preemption statute and not by the substantive provisions of the legislation. See id. at 517. The reason is that "Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not pre-empted." Id. Because Congress adopted an explicit preemption statute when it enacted the Federal Cigarette Labeling and Advertising Act ("FCLAA") that provides a reliable indication of Congress' intent regarding preemption, the federal preemption issue in this case is "governed entirely by the express language" of the FCLAA's preemption statute. Cipollone, 505 U.S. at 517.
 
 A.
 
 11
 After a Surgeon General's advisory committee reported in 1964 that cigarette smoking is a health hazard, the Federal Trade Commission ("FTC") promulgated a trade regulation that would have required tobacco companies " `to disclose, clearly and prominently, in all advertising and on every pack, box, carton, or container of cigarettes that cigarette smoking is dangerous to health and may cause death from cancer and other diseases.' " Cipollone, 505 U.S. at 513 (quoting 29 Fed. Reg. 8325 (1964)). In addition to the FTC, a number of states also acted in response to the advisory committee's report and considered regulating the labeling and advertising of cigarettes. See id. With the prospect of diverse, nonuniform, and confusing cigarette labeling and advertising regulations looming over the tobacco industry, Congress enacted the FCLAA in 1965 to adequately inform the public about the health hazards of smoking and to protect the national economy from the burdens of diverse regulations related to cigarette advertising and labeling. See id. at 514; see also 15 U.S.C. S 1331.
 
 
 12
 To inform the public about the possible dangers of smoking, the FCLAA required that all cigarette packages contain a conspicuous warning label stating: "Caution: Cigarette Smoking May Be Hazardous To Your Health." Cipollone, 505 U.S. at 514 (internal quotations omitted). To prevent diverse regulations, the FCLAA preempted advertising and labeling regulations related to smoking and health. The FCLAA's preemption provisions provided:
 
 
 13
 (a) No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package.
 
 
 14
 (b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.
 
 
 15
 Id. at 514. The FCLAA also contained a termination provision which stated that the FCLAA's advertising regulations would terminate on July 1, 1969. See id.
 
 
 16
 As July 1, 1969, approached, the FTC, Federal Communications Commission, and several states again contemplated the regulation of tobacco advertising and labeling. For the same reasons that Congress originally adopted the FCLAA in 1965, Congress amended the FCLAA by enacting the Public Health Cigarette Smoking Act of 1969 ("PHCSA"). The PHCSA, in relevant part, expanded the scope of the FCLAA's preemption provisions. Since the adoption of the PHCSA in 1969, the FCLAA's preemption statutes have provided:
 
 
 17
 (a) No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.
 
 
 18
 (b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.
 
 
 19
 15 U.S.C. S 1334.
 
 
 20
 The plain language of the FCLAA preempts any state law that imposes a requirement or prohibition based on smoking and health with respect to cigarette advertising. See Cipollone, 505 U.S. at 523-24; see also Vango Media, Inc. v. City of New York, 34 F.3d 68, 72 (2d Cir. 1994) ("We need only determine whether the Local Law impose[s] a requirement or prohibition based on smoking and health with respect to the advertising or promotion of any cigarettes.") (internal quotations and ellipses omitted). The Board's resolution banning outdoor tobacco advertising in Pierce County is preempted by the express language of the FCLAA because the resolution imposes a requirement or prohibition based on smoking and health with respect to cigarette advertising.
 
 
 21
 The Resolution is a requirement or prohibition because the phrase "requirement or prohibition" encompasses positive enactments adopted by political subdivisions, see Cipollone, 505 U.S. at 521; Vango Media, 34 F.3d at 72-73, and because the Resolution expressly prohibits outdoor tobacco advertising in Pierce County. The Resolution also imposes a requirement on cigarette advertising because it requires availability advertisements to be printed in a legislatively defined tombstone format--"plain black type on a white field without adornment and unaccompanied by color, opinion, artwork, or logos." The Resolution is based on smoking and health because, in the words of the Board, it "pertains to matters of health and safety of the citizens of Pierce County. " In fact, the findings which are included in the Resolution to justify the Board's ban on outdoor tobacco advertising almost exclusively refer to the various health risks that are related to cigarette smoking. Finally, the Resolution is a requirement or prohibition with respect to cigarette advertising because the Resolution expressly prohibits outdoor tobacco advertisements and regulates point of sale availability information. The Resolution is, therefore, preempted by the clear and express language of the FCLAA because it creates a "requirement or prohibition based on smoking and health . . . with respect to the advertising or promotion of any cigarettes." 15 U.S.C. S 1334(b).
 
 B.
 
 22
 The Board does not contend that the plain language of the FCLAA fails to preempt its ban on outdoor tobacco advertisements. Rather, the Board attempts to evade the express language of the FCLAA's preemption provision by citing to the Fourth Circuit's opinion in Penn Advertising of Baltimore, Inc. v. Mayor and City Council of Baltimore, 63 F.3d 1318 (4th Cir. 1995), vacated and remanded,518 U.S. 1030 (1996), affirmed on remand, 101 F.3d 332 (4th Cir. 1996), and arguing that the FCLAA does not preempt its resolution because the FCLAA only preempts local laws that regulate the content rather than the location of cigarette advertisements. We find the Board's argument and the Fourth Circuit's decision in Penn Advertising unpersuasive, and we decline to follow the reasoning of our sister circuit because it ignores the history, purpose, and language of the FCLAA and is not supported by Supreme Court precedent.
 
 
 23
 Penn Advertising addressed the issue of whether a city ordinance that prohibits the placement of any sign advertising cigarettes in a publicly visible location was preempted by the FCLAA (see id. at 1320-21), and concluded that such an ordinance was not preempted by the FCLAA because an ordinance which regulates the location rather than the content of cigarette advertisements is not based on smoking and health. Penn Advertising relied on the Supreme Court's decision in Cipollone and reasoned that if the FCLAA did not preempt the common law warranty, misrepresentation, fraud, and conspiracy claims filed in Cipollone, the FCLAA did not preempt the City of Baltimore's general ban on publicly visible tobacco advertisements.
 
 
 24
 Penn Advertising misconstrues Cipollone when it concludes that content regulations can be distinguished from location regulations under the FCLAA because Cipollone does not support such a distinction. In Cipollone, the Court had to determine whether state common law actions filed against tobacco companies for failure to warn, breach of warranty, fraudulent misrepresentation, and conspiracy were preempted by the FCLAA. See Cipollone, 505 U.S. at 508-09. A plurality of the Court addressed each common law claim individually stating that "[t]he central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common-law damages action constitutes a `requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." Id. at 523-24 (Stevens, J., plurality) (emphasis added). The plurality opinion expressly recognized that the plain language of the FCLAA is determinative to resolving preemption issues regarding tobacco advertising.
 
 
 25
 The plurality held that failure to warn claims were preempted by the FCLAA to the extent that such claims required a plaintiff to show that tobacco advertisements should have included additional or more clearly stated health warnings. See id. at 524-25. The plurality reasoned that such failure to warn claims were preempted because they relied on "a statelaw requirement or prohibition . . . with respect to. . . advertising or promotion." Id. at 524. The plurality noted, however, that failure to warn claims based on negligent testing and research practices were not preempted by the FCLAA because such claims were unrelated to advertising and promotional practices. See id. at 524-25.
 
 
 26
 The plurality concluded that express warranty claims were not preempted by the FCLAA because liability for express warranty is imposed not under state law but by the warrantor's express actions. See id. at 525-27. The plurality also concluded that the FCLAA does not preempt fraudulent misrepresentation claims because fraudulent misrepresentation claims are based on a state law duty not to deceive rather than a state law duty "based on smoking and health." See id. at 528-29. Likewise, the plurality concluded that the FCLAA does not preempt conspiracy to defraud claims because such claims are based on a duty not to conspire to commit fraud rather than a duty "based on smoking and health. " See id. at 530. The Cipollone plurality always examined the plain language of the FCLAA to determinepreemption issues and never recognized a distinction between content regulations and other regulations like location regulations. The Board's argument and the Fourth Circuit's conclusion that location regulations are distinguishable from content regulations under the FCLAA are, therefore, not supported by the plurality decision in Cipollone.
 
 
 27
 In two recent cases, the Second and Seventh Circuits held that a ban on outdoor advertising is not preempted by the FCLAA. See Greater New York Metro. Food Council, Inc. v. Giuliani, 195 F.3d 100, 108 (2d Cir. Oct. 25, 1999); Federation of Advertising Indus. Representatives, Inc. v. City of Chicago, 189 F.3d 633, 639 (7th Cir. 1999) ("FAIR"). Both of these cases draw a distinction between location and content regulations by holding that certain bans on outdoor advertising are not preempted, while finding that a tombstone requirement is preempted.[1]
 
 
 28
 Recognizing that the text of the FCLAA preemption provision does not support the artificial distinction between content and location restrictions, both decisions turn to the Congressional purpose behind the FCLAA preemption statute for support. See Giuliani, 195 F.3d at 104; FAIR, 189 F.3d at 637. Specifically, they recognize that the Congressional purpose behind the FCLAA preemption statute was "an effort to avoid the chaos of multiple diverse regulations" in tobacco advertising. Giuliani, 195 F.3d at 106 (quoting Vango Media, Inc. v. City of New York, 34 F.3d 68, 70 (2d Cir. 1994)); see also FAIR, 189 F.3d at 638. However, both decisions conclude that location restrictions do not lead to the "diverse, nonuniform, and confusing" advertising standards that Congress aimed to prevent by promulgating the FCLAA preemption statute. See Giuliani, 195 F.3d at 106; FAIR, 189 F.3d at 639.
 
 
 29
 The distinction between location and content regulations is not only unsupportable by reference to the text, but the Congressional purpose of S 1334(b) supports the preemption of a ban on outdoor tobacco advertising. As noted in Giuliani, advertisers are forced to comply with diverse local zoning laws; however, this fact does not justify placing additional restrictions solely on tobacco advertisers. Rather, the failure to preempt location restrictions on tobacco advertising will place an unjustifiable burden upon a tobacco advertiser to consult local regulations concerning the placement of tobacco advertisements in every locality in which it wishes to advertise. The bans on outdoor advertising in FAIR, Giuliani, and this case present a good example of the multitude of different regulations tobacco advertisers face. The ban in Giuliani prevents any tobacco advertising (other than tobacco advertisements on motor vehicles) within a 1000 foot buffer zone around a school building, playground, child day care center, or youth center. See Giuliani, 195 F.3d at 103. In contrast, the Chicago ordinance at issue in FAIR bans all public advertising of tobacco advertising, but carves out numerous broad exceptions including "signs located near highways, signs in certain commercial and manufacturing zoning areas, signs at certain sports facilities, signs inside a store that is licensed to sell alcohol and cigarette products, signs on commercial vehicles transporting such products, and signs identifying the premises upon which such products are sold." FAIR, 189 F.3d at 639.Finally, the Tacoma-Pierce County regulation in this case constitutes a complete ban on all outdoor advertising, except those advertisements that meet a tombstone exception. Thus, a tobacco advertiser is faced with diverse and nonuniform tobacco advertising regulations depending solely upon the politics of the locality of the advertising. This is precisely the result Congress was trying to avoid in promulgating S 1334(b).
 
 
 30
 The structure and history of S 1334(b) support our view that a local ban on outdoor advertising is preempted by the FCLAA. Although we recognize that there is some ambiguity in the FCLAA's legislative history, see Cipollone, 505 U.S. at 521, the structure and history of the FCLAA do not unambiguously support the positions taken by Giuliani and FAIR; rather, the structure and history of the FCLAA support preemption and there is no reason to depart from the plain language of S 1334(b). See Cipollone, 505 U.S. at 521-22 (" `We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning.' ") (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)); Vango Media, 34 F.3d at 73 ("[W]e rely on an express preemption analysis in which focus remains on the language Congress used in S 1334(b).").
 
 
 31
 The statutory text of the FCLAA is the starting point for preemption analysis under S 1334. See Cipollone, 505 U.S. at 521-22; see also id. at 532 (Blackmun, J., concurring in part and dissenting in part) ("An interpreting court must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") (internal quotation marks omitted); id. at 548 (Scalia, J., concurring in part and dissenting in part) ("The proper rule of construction for express preemption provisions is, it seems to me, the one that is customary for statutory provisions in general: Their language should be given its ordinary meaning."). "[T]here is no `good reason to believe' that Congress meant less than what it said; indeed, in light of the narrowness of the 1965 Act, there is`good reason to believe' that Congress meant precisely what it said in amending that Act." Id. at 522. The Supreme Court reiterated its emphasis on giving effect to the plain language of statutory text in a recent Medical Device Amendments (MDA) case, see Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996). In Medtronic, the Court again stated that "the scope of [a] preemption statute must begin with its text . . . . " Id. at 484-85.
 
 
 32
 Despite the holdings of Penn Advertising, FAIR, and Giuliani, the text of the FCLAA's preemption provision clearly preempts a ban on outdoor advertising because such a ban constitutes a "requirement or prohibition based on smoking and health . . . with respect to the advertising or promotion of any cigarettes." 15 U.S.C. S 1334(b).
 
 C.
 
 33
 The language, structure, and history of the FCLAA also support the conclusion that location regulations directed at cigarette advertising cannot be distinguished from content regulations under the FCLAA. The original 1965 preemption statute provided: "No statement relating to smoking and health shall be required in the advertising of any cigarettes . . . ." The current preemption statute provides:"No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes . . . ."
 
 As the plurality in Cipollone stated:
 
 34
 Compared to its predecessor in the 1965 Act, the plain language of the pre-emption provision in the 1969 Act is much broader. First, the later Act bars not simply `statements' but rather `requirements or prohibitions imposed underState law.' Second, the later Act reaches beyond statements `in the advertising' to obligations `with respect to the advertising or promotion' of cigarettes.
 
 
 35
 Cipollone, 505 U.S. at 520. To give effect to the 1969 amendments, the distinction between content regulations and location regulations cannot now be sustained because the 1965 statute only preempted content regulations and the 1969 amendments broadened the scope of preemption beyond state laws that regulated only the content of tobacco advertisements. See id. at 519-20 ("[T]he 1965 Act only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements.").
 
 
 36
 The impact of the 1969 amendments on the FCLAA's preemptive scope is further demonstrated by an examination of the FCLAA's other preemption provision. The FCLAA's first preemption provision was not amended in 1969 and still provides that "[n]o statement relating to smoking and health . . . shall be required on any cigarette package." 15 U.S.C. S 1334(a) (emphasis added). The second preemption provision is at issue in this case and provides that "no requirement or prohibition based on smoking and health shall be imposed . . . with respect to the advertising or promotion of . . . cigarettes." 15 U.S.C. S 1334(b) (emphasis added).
 
 
 37
 In order to distinguish the language currently used in S 1334(a) from the language currently used inS 1334(b), S 1334(b) must be read as preempting more than just content regulations. The language used in S 1334(a) is focused on content regulations because it narrowly preempts statements related to smoking and health on cigarette packages, but the language of S 1334(b) is not focused on content because it broadly preempts requirements and prohibitions based on smoking and health with respect to advertisements. If we were to accept the Board's content-location distinction we would be forced to give "requirement or prohibition" in subsection (b) essentially the same meaning as "statement" in subsection (a), thereby ignoring the basic principle of statutory construction that different words in the same statute must be given different meanings. See Boise Cascade Corp. v. EPA , 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.") (citing Sutherland Stat. Const. SS 46.05, 46.06 (4th ed. 1984)). Accordingly, the language, history, and structure of S 1334(b) demonstrate, contrary to the Board's position, that the FCLAA and S 1334(b) preempt more than just regulations affecting the content of cigarette advertisements.
 
 D.
 
 38
 Finally, the conclusion that the Resolution is preempted by the FCLAA advances the legislative policies that underlie the federal act. When Congress enacted the FCLAA it declared:
 
 
 39
 It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby--
 
 
 40
 . . .
 
 
 41
 commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.
 
 
 42
 15 U.S.C. S 1331. If every board of health, city, county, and state in this country regulated the location of tobacco advertisements and prescribed certain tombstone formats for availability information signs like the Board has in this case, the purpose of the FCLAA would be frustrated because the national economy would be impeded by diverse, nonuniform, and confusingcigarette advertising regulations. The conclusion that the Resolution is preempted by the FCLAA is, therefore, not only mandated by the language of the statute but also consistent with the legislative goals that spawned the FCLAA's enactment in 1965 and subsequent expansion in 1969.
 
 IV.
 
 43
 In a final effort to save its resolution from preemption, the Board asserts two arguments that are unrelated to the language or purpose of the FCLAA. First, the Board argues that state and local governments can regulate and ban outdoor tobacco advertising under Packer Corp. v. Utah , 285 U.S. 105 (1932). Second, the Board argues that Congress exceeded its authority under the commerce clause when it preempted local regulation of wholly intrastate tobacco advertising. These final arguments are meritless.
 
 
 44
 Although the Court in Packer upheld Utah's statewide ban on outdoor tobacco advertising, Packer is inapplicable to this case because it pre-dates the enactment of the FCLAA and addresses issues irrelevant to this appeal. The specific issues in Packer were whether a statewide ban on outdoor tobacco advertisements that left print advertisements unregulated violated the equal protection clause by creating an arbitrary classification, impermissibly took advertisers' property without due process of law by limiting the freedom of contract, or constituted an impermissible state regulation of interstate commerce. See Packer, 285 U.S. at 109-12. Packer does not address or limit Congress' power to preempt local regulation of tobacco advertising or stand for the broad proposition that local governments have an inherent and undeniable right to regulate tobacco advertising. Packer simply instructs that in the absence of federal regulations, local governments can regulate tobacco advertising in general and ban outdoor tobacco advertising in particular.
 
 
 45
 The Board's argument that Congress cannot preempt local regulation of tobacco advertising that is wholly intrastate under the commerce clause is also meritless because Congress can regulate activities that are wholly intrastate if the activities have a substantial effect on interstate commerce. See United States v. Lopez, 514 U.S. 549, 555-56 (1995). It is beyond dispute that intrastate tobacco advertising has a substantial effect on interstate commerce because, as the Board itself recognizes, the tobacco industry spends nearly $5 billion annually on marketing campaigns. Congress was, therefore, well within its powers under the commerce clause when it enacted the FCLAA's preemption provisions.
 
 V.
 
 46
 Because the Resolution is a requirement or prohibition based on smoking and health with respect to the advertising and promotion of cigarettes and because content regulations are indistinguishable from location regulations under the language and purpose of the FCLAA, the district court erred when it concluded that the FCLAA does not preempt the Resolution. We, therefore, reverse the district court's judgment in favor of the Board, hold that the Resolution is preempted by the FCLAA, and grant the Lindseys' motion for summary judgment on their federal preemption claim. Because the Resolution is preempted by the FCLAA, we decline to address the remaining issues raised on appeal.
 
 
 47
 REVERSED.
 
 
 
 Notes:
 
 
 [1]
 The tombstone provisions at issue in Giuliani and FAIR were slightly different, although both tombstone provisions were struck down on the basis that they were content restrictions imposed upon tobacco advertising. See Giuliani, 195 F.3d at 108; FAIR , 189 F.3d at 640. In Giuliani, a tobacco advertiser could place only "a single, black and white, text-only `tombstone' sign stating, `TOBACCO PRODUCTS SOLD HERE' " within ten feet of an entrance to a store where tobacco products are sold. Giuliani, 195 F.3d at 103. The tombstone provision in FAIR allowed only a "generic, as opposed to brand-specific, mention of a tobacco product." FAIR, 189 F.3d at 640.